**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Moustapha Lotfi ELJAMMAL, Defendant–Appellant.**

**No. 06–10001.**

United States Court of Appeals, Ninth Circuit.

Submitted March 12, 2007 *.

Filed June 29, 2007.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Peter S. Sexton, Esq., Howard D. Sukenic, Esq., USPX—Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff–Appellee.

Patrick E. McGillicuddy, Esq., Law Offices of Patrick E. McGillicuddy, Philip E. Hantel, Esq., Phoenix, AZ, for Defendant–Appellant.

Before: HAWKINS, THOMAS, and CLIFTON, Circuit Judges.

MEMORANDUM **

Moustapha Lotfi Eljammal appeals his conviction and sentence, raising nine different issues. We reverse his conviction

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

on one count of the indictment, but affirm the conviction on the remaining counts and also affirm the sentence.

1. Evidence of "other cars"

The trial court did not err in allowing the prosecution to present evidence of "other cars" not included in specific substantive charges. The overarching "conspiracy" charge encompassed all the illegal acts that Eljammal allegedly conspired to commit. We have held that a conspiracy's underlying criminal acts are "inextricably intertwined" with the conspiracy charge, and therefore that evidence of these acts can be introduced as intrinsic to the conspiracy. *See, e.g., United States v. Lillard,* 354 F.3d 850, 854 (9th Cir.2003). Here, the theft of the so-called "other cars" was a central activity of the conspiracy. Since these thefts were themselves crimes, they are underlying criminal bases for the conspiracy charge. Therefore, evidence relating to the "other cars" is admissible.

2. Competency of the MVD witnesses

The MVD witnesses were competent. Federal Rule of Evidence 602 states that someone is competent to testify only if they have sufficient personal knowledge. Here, the government established through foundational testimony that the MVD employees either created or oversaw the creation of every false MVD record. Furthermore, the MVD employees knew Eljammal and said that he employed them to create the fake records. They had sufficient personal knowledge to testify about these matters.

3. The MVD records' admissibility

Eljammal argues that the MVD records were not the best evidence. We disagree. Under Federal Rule of Evidence 1004, the original document is not required if the original has been destroyed. The state had placed the MVD records on microfiche and destroyed the originals. Also, Federal Rule of Evidence 1005 states that the contents of a public record can be proved by a certified copy. Each of the MVD records was certified.

Eljammal also argues that the MVD records were inadmissible hearsay. We disagree. Even if these documents were offered for their truth, all of the MVD documents fall under the public records hearsay exception. *See* Fed.R.Evid. 803(8). Furthermore, any alleged statements by Eljammal that are incorporated into the MVD documents are admissible as party admissions. *See* Fed.R.Evid. 801(d)(2).

4. Evidence of a single conspiracy

Viewing the evidence in the light most favorable to the government, the evidence of a single conspiracy was sufficient. A single conspiracy may involve subgroups of conspirators. *United States v. Bibbero,* 749 F.2d 581, 587 (9th Cir.1984). When such subgroups exist, we look at several factors to determine whether there is a single overarching conspiracy. These factors include the nature of the scheme; the identity of the participants; the quality, frequency, and duration of transactions; and commonality of times and goals. *See United States v. Umagat,* 998 F.2d 770, 773 n. 3 (9th Cir.1993); *United States v. Brown,* 912 F.2d 1040, 1043 (9th Cir.1990). Here, the government presented evidence of a three-year-long criminal network involving three sets of people: The Canadian participants; the Arizona MVD employees; and the Arizona defendants who switched VINs and defrauded insurance companies. Each car went through this network in roughly the same way: it was stolen, supplied with forged documents, VIN-switched, and disposed of for profit. The

"paper cars" went through a similar process. There were dozens of these transactions, all overlapping in time and participants. In short, there is ample evidence of a single conspiracy.

5. Proof of Eljammal's knowledge

The government also offered ample evidence to prove Eljammal was a knowing conspirator. A defendant's knowledge of, and participation in, a conspiracy can be inferred from circumstantial evidence. *United States v. Taren–Palma,* 997 F.2d 525, 536 (9th Cir.1993), *overruled on other grounds by United States v. Shabani,* 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). A jury could infer Eljammal's knowledge from the testimony of co-defendants, the hundreds of pages of documentary evidence, and the videos and photographs of Eljammal participating in VIN switching.

6. Closing arguments

The prosecution did not introduce prejudicial extraneous evidence during closing arguments. The prosecution only referred to admitted evidence, which by definition is not extraneous. Even if the prosecution erred in this reference, the mistake would not warrant reversal. We review a defendant's objections to prosecutorial misconduct for harmless error. *United States v. Blueford,* 312 F.3d 962, 973–74 (9th Cir.2002). Reversal is only appropriate if it "appears more probable than not that prosecutorial misconduct materially affected the fairness of the trial." *United States v. Sayakhom,* 186 F.3d 928, 943 (9th Cir.1999). Here, the prosecution had presented enough evidence of Eljammal's guilt that any reference to extraneous surveillance footage would be inconsequential.

7. Jury instructions

The trial court did not err in instructing the jury on mail fraud and wire fraud. These crimes were inherent to the alleged conspiracy. The government thus was required to prove the co-conspirators had the requisite intent to commit these underlying offenses. *See United States v. Thomas,* 887 F.2d 1341, 1347 (9th Cir. 1989).

8. Evidence that Dana Hooper's Jetta was stolen

We conclude that the government failed to present sufficient evidence to convict Eljammal on Count 21 of the indictment. Specifically, the government did not demonstrate that the Jetta was stolen. Since the Jetta's owner, Dana Hooper, was apparently a willing participant in the scheme to make her car disappear, the car was not stolen from her. The government argues that the car was not stolen from Hooper, but rather from her bank. Even if the criminal statutes forbid such conduct, the government failed to meet its burden of proof. 18 U.S.C. § 2313 requires the government to demonstrate intent to deprive someone of a property interest. *Fernandez–Ruiz v. Gonzales,* 468 F.3d 1159, 1170 (9th Cir.2006). The government offered no evidence that Hooper intended to deprive her bank of any property interest in the Jetta. Indeed, since her plan was intended to get her out from under the bank loan, it presumably included paying off the bank with the insurance proceeds after the car was reported stolen. That may have been fraudulent, but it did not mean that the car was stolen.

We therefore vacate Eljammal's conviction for Count 21. We do not, however, remand for sentencing, as the district court's sentencing calculation would not have changed even without Count 21. To calculate Eljammal's sentence under the United States Sentencing Guidelines, the district court grouped Count 21 with nine other convictions. The district court based the offense level of that group of sentences

on another count that had a higher base offense level than Count 21. Since the other counts still stand, Eljammal's total offense level is unchanged even after his conviction on Count 21 is reversed.

9. Eljammal's sentence

Finally, the district court neither miscalculated the loss amount for sentencing purposes nor issued an unreasonable sentence. Sentencing guidelines calculations are reviewed for clear error, and the resulting sentence for reasonableness. *United States v. Mix,* 457 F.3d 906, 911 (9th Cir.2006). The district court based its loss calculation on the unrebutted testimony of the MVD employees. Since the district court had no reason to doubt this testimony, it did not clearly err in calculating the losses. There is no evidence that the sentence was unreasonable.

Eljammal's convictions on counts 1–4, 5, 7, 8, 14–16, 20, 22, 23, and 25 are **AFFIRMED.** His sentence is also **AFFIRMED.** Eljammal's conviction on count 21 is **REVERSED.**